**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LINDA SWARTOUT and JOHN C.
SWARTOUT, individually, and on behalf
of all others similarly situated,

     Plaintiffs,

v.                                                                    CASE NO: 8:08-cv-890-T-26EAJ

RAYTHEON COMPANY,

     Defendant.

_____/

**O R D E R**

Before the Court is Defendant Raytheon Company's Motion to Stay <u>Sher</u>[1] and

<u>Swartout</u> Actions Pending Agency Action (Dkt. 19), and Plaintiffs' Memorandum in

Opposition.  (Dkt. 25).  After careful consideration of the motion and the applicable law,

the Court concludes that the motion should be denied.

In this action, residential property owners seek damages resulting from the toxic

plume of groundwater contaminants produced by the operations of the Raytheon facility

and former owners of the site.  The facility, which has not always been owned by

Raytheon, has been used for the manufacture of electronics, communication hardware,

---

[1]  <u>Sher v. Raytheon</u>, Case no. 8:08-cv-889-T-26TGW.

and defense electronics since the 1950s.[2]  Activities alleged to have occurred at this

facility over the years include electronics assembly, hand and mass soldering, vapor

degreasing, coating, painting, chrome conversion, electroplating, metal finishing, photo-

imaging, environmental product testing, photographics, machining, electronics

engineering, and laboratory functions.[3]  The particular contaminants alleged include

dioxane, trichloroethylene (TCE), dichlorethene, and vinyl chloride.[4]  The property

changed ownership in 1957, 1974, and finally, around 1996, Raytheon acquired the

facility.[5]

In this case, Plaintiffs seek damages under theories of negligence, strict liability

pursuant to section 376.205 of the Florida Statutes, strict liability for abnormally

hazardous activity, private nuisance, trespass, and medical monitoring.[6]  Raytheon desires

to stay this action and the Sher action based on the doctrine of primary jurisdiction and

the interest of judicial economy.  Raytheon asserts that Chapter 403 of the Florida

Statutes requires that the agency, the Florida Department of Environmental Protection

---

[2]  See docket 2 at paras. 25-27 in Sher v. Raytheon, Case no. 8:08-cv-889-T-26TGW.

[3]  See docket 2 at para. 27 in Sher v. Raytheon, Case no. 8:08-cv-889-T-26TGW.

[4]  See docket 2 at para. 8; docket 2 at paras. 37 & 38 in Sher v. Raytheon, Case no. 8:08-cv-889-T-26TGW.

[5]  See docket 2 at para. 25 in Sher v. Raytheon, Case no. 8:08-cv-889-T-26TGW.

[6]  In the Sher case, the Plaintiffs seek damages based on theories of trespass, nuisance, unjust enrichment, strict liability, negligence, and medical monitoring.  Sher, Case no. 8:08-cv-889-T-26TGW.

(FDEP), decide the issues in this case.  Additionally, Raytheon urges a stay in view of the process already initiated with the FDEP, which includes the recent May 30, 2008, filing of the Addendum to the Site Assessment Report.[7]  Raytheon believes that a timely resolution from the FDEP is forthcoming and requests a stay of no more than four to six months.[8]  Plaintiffs disagree and cite the lengthy agency history with respect to the site.

## AUTHORITY OF FDEP

Plaintiffs correctly assert that this action, as well as the <u>Sher</u> action, is predominantly one for damages suffered by one adjacent landowner at the hands of another.  Plaintiffs further argue that the Florida legislature did not bestow upon the FDEP the authority to determine the legal liability of the persons conducting the site rehabilitation, which in this case is Raytheon, or to determine the damages suffered or the amount of a fund needed for medical monitoring.  These contentions prove to be valid.

---

[7]  According to Plaintiffs, Raytheon filed the initial notification of contamination to FDEP as of July 12, 2007.  Despite the subsequent filing of the initial Assessment Report and the multiple addenda that followed thereafter, FDEP has not yet assessed the information provided by Raytheon.

[8]  This estimated period includes the 90-day period for Raytheon's preparation of a Remedial Action Plan once the FDEP has approved the adequacy of the information. Fla. Admin. Code Ann. r. 62-780.600(9)-(10).  The potential for FDEP to disapprove of the adequacy of information in the Site Assessment and all its addenda is not a part of the calculations of the time necessary for a stay.  According to Plaintiffs, the site at issue in this case has been the subject of assessment reports since as early as 1998, none of which have been approved by the FDEP to date.  At the very least, Raytheon has been required to monitor the site since 2005.

The power of the FDEP encompasses "the duty to control and prohibit pollution of air and water in accordance with the law and rules adopted and promulgated by it." See Fla. Stat. § 403.061.  Section 376.30701(2), Florida Statutes, titled in part "Application of risk-based corrective action principles to contaminated sites . . . rule-making authority," provides the statutory basis for the promulgation of administrative rules by the secretary of the department.  The rules must set forth the criteria for site rehabilitation programs. Chapter 62-780 of the Florida Administrative Code (FAC) "implements the risk-based corrective action provisions of Section 376.30701(2), F.S., to accomplish" the stated purpose of preventing adverse effects on human health, public safety, and the environment caused by contaminants released into the environment.  Fla. Admin. Code Ann. r. 62-780.110(1).  Neither the statute nor the FAC authorize the FDEP to determine the legal liability on the part of the owner of the site causing the pollution to the adjacent landowners.  The FAC, in fact, specifically mandates that legal liability be sorted out according to the provisions of Chapters 376 and 403 of the Florida Statutes.[9]

---

[9]   FAC Rule 62-780.110(2) provides that "This chapter may not be used to establish whether a person is legally responsible for conducting site rehabilitation.  Legal responsibility shall be determined by application of relevant provisions of Chapters 376 and 403, F.S."

Sections 376.205 and 376.313(3)[10] of the Florida Statutes create a private right of action in a property owner against the party polluting the property owner's ground water. Section 376.205 provides that "any person may bring a cause of action against a responsible party in a court of competent jurisdiction for damages . . . resulting from a discharge or other condition of pollution."  Prior or concurrent administrative action is not referenced in the statute or regulations, thereby making the issues of liability and damages matters for the court and not for the agency.

### EXPERTISE OF FDEP

Setting aside that the FDEP does not possess the authority to determine damages in a private right of action against a landowner whose contaminants have traveled into adjoining property, the FDEP does hold the power to assess the degree of pollution, which is inherent in its duty to control and prohibit pollution.  To the extent the FDEP therefore holds special knowledge regarding the determination of the proper site assessment and clean-up with respect to contaminants, the doctrine of primary jurisdiction may apply in certain cases to permit an agency to decide particular factual and regulatory-related issues deserving of its expertise.  The following analysis supports the decision to

---

[10]   Section 376.313(3) provides as follows:
> Except as provided in s. 376.3078(3) and (11), nothing contained in ss. 376.30-376.319 prohibits any person from bringing a cause of action in a court of competent jurisdiction for all damages resulting from a discharge or other condition of pollution covered by ss. 376.30-376.319.

permit this action to proceed in this Court contemporaneously with the ongoing process in the state agency.

The doctrine of primary jurisdiction generally applies to situations where the expertise of an administrative body would benefit the courts in deciding a particular issue or dispute because the dispute requires the exercise of knowledge gained outside the realm of a judge's experience.  The Supreme Court[11] has described primary jurisdiction as follows:

> [I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.  This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined.  Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

---

[11]  In actions predicated on diversity jurisdiction, such as this one, this Court must follow the substantive law of Florida, the forum state, regarding the applicability of the primary jurisdiction doctrine.  See Kendra Oil & Gas, Inc. v. Homco, Ltd., 879 F.2d 240, 242 (7th Cir. 1989) (stating that federal courts "defer to the primary jurisdiction of a state agency under the principles established by Erie, if state courts would defer."); Mills v. Davis Oil Co., 11 F.3d 1298, 1304 (5th Cir. 1994) (holding that the law of primary jurisdiction is substantive pursuant to Erie).  Nevertheless, the background of the creation of the doctrine of primary jurisdiction is instructive in the analysis because Florida's body of law developed from the rudiments and principles espoused by the federal courts.

Far East Conference v. United States, 342 U.S. 570, 574-75, 72 S.Ct. 492, 494-95, 96 L.Ed. 576 (1952).  Primary jurisdiction "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."  United States v. Western Pacific Railroad Co., 352 U.S. 59, 63-65, 77 S.Ct. 161, 165-66, 1 L.Ed. 2d 126 (1956).  Application of primary jurisdiction "transfers from court to agency the power to determine" various aspects of the commercial relationship.  Id.[12]

Florida courts recognize the doctrine of primary jurisdiction to "postpone judicial consideration of a case to administrative determination of important questions involved by an agency with *special competence in the area*."  See Humana of Florida, Inc. v. McKaughan, 652 So.2d 852, 860 (Fla.Dist.Ct.App. 1995) (quoting Hill Top Developers v. Holiday Pines Serv. Corp., 479 So.2d 368, 370 (Fla.Dist.Ct.App. 1085, review denied, 488 So.2d 68 (Fla. 1986)).  Raytheon relies primarily on Flo-Sun, Inc. v. Kirk, 783 So.2d 1029 (Fla. 2001), which describes the doctrine of primary jurisdiction as one of judicial deference.  Flo-Sun, 783 So.2d at 1036 n.4 & 1039.  The particular facts of the Flo-Sun case dictated that the issues reached "beyond the ordinary experience of judges and

_____

[12]   See also In re Long Distance Telecomms. Litig., 831 F.2d 627, 629-230 (6th Cir. 1987) (holding that primary jurisdiction required referral of claim regarding reasonableness of defendant's practices to Federal Communications Commission but not state law claims for damages under fraud theories); Tampa Interstate 75 Ltd. P'ship v. Florida Gas Transmission Co., 294 F.Supp. 2d 1277 (M.D. Fla. 2003) (employing primary jurisdiction because controversy involved effects of violation of Natural Gas Act and Federal Energy Regulatory Commission's expertise was required to implement the regulatory scheme in place).

juries" and fell within the special competence attributed to the administrative agency. The case at hand, however, does not dictate the same result because it is distinguishable from Flo-Sun. Although Flo-Sun involved an environmental action, the case turned on technical questions requiring the expertise of the agency, specifically a claim for public nuisance. In Flo-Sun, sugar producers had polluted the community at large by the harvesting and processing of sugar cane by disposing of furfural in deep wells without a permit from the FDEP. In contrast, the instant case seeks damages for the loss of use and decrease in property value caused by the contaminants, not the general enforcement of the state's pollution laws in the form of an adjudication of a public nuisance. Hence, this Court will not defer determination of damages to the FDEP in this case.

## PARALLEL PROCEEDINGS

Raytheon contends that conducting parallel proceedings before the FDEP and this Court would risk inconsistent results, forego the FDEP's needed expertise in the area of pollution, and sacrifice efficiency and fairness. As noted above, the FDEP does not possess special competence beyond that of the court or jury with respect to the determination of damages. Courts and juries routinely decide issues of property value, and this action, as alleged, does not require the special expertise of the FDEP on any matters of pollution. The efficiency of the progress of the agency action will not be impeded in any way by the resolution of damages in this case. There has been no showing of any prejudice should this action proceed in due course. Consequently, this Court chooses to exercise its discretion to oversee the conduct of this case without delay.

It is therefore **ORDERED AND ADJUDGED** that the Motion to Stay <u>Sher</u> and

<u>Swartout</u> Actions (Dkt. 19) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on July 14, 2008.


___s/*Richard A. Lazzara*_____
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>**COPIES FURNISHED TO**</u>:
Counsel of Record